(Slip Opinion)          OCTOBER  TERM,  2015                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## NICHOLS *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE TENTH CIRCUIT

No. 15–5238.   Argued March 1, 2016—Decided April 4, 2016

The Sex Offender Registration and Notification Act (SORNA) makes it
a federal crime for certain sex offenders to "knowingly fai[l] to regis-
ter or update a registration," 18 U. S. C. §2250(a)(3), and requires
that offenders who move to a different State "shall, not later than 3
business days after each change of name, residence, employment, or
student status," inform in person "at least 1 jurisdiction involved
pursuant to [42 U. S. C. §16913(a)] . . . of all changes" to required in-
formation, §16913(c).  A §16913(a) jurisdiction is "each jurisdiction
where the offender resides, . . . is an employee, and . . . is a student."

   Petitioner Nichols, a registered sex offender who moved from Kan-
sas to the Philippines without updating his registration, was arrest-
ed, escorted to the United States, and charged with violating SORNA.
After conditionally pleading guilty, Nichols argued on appeal that
SORNA did not require him to update his registration in Kansas.
The Tenth Circuit affirmed his conviction, holding that though Nich-
ols left Kansas, the State remained a "jurisdiction involved" for
SORNA purposes.

*Held*: SORNA did not require Nichols to update his registration in
Kansas once he departed the State.  Pp. 4–8.

   (a) SORNA's plain text dictates this holding.   Critical here is
§16913(a)'s use of the present tense.  Nichols once *resided* in Kansas,
but after moving, he "resides" in the Philippines.  It follows that once
Nichols moved, he was no longer required to appear in Kansas be-
cause it was no longer a "jurisdiction involved."  Nor was he required
to appear in the Philippines, which is not a SORNA "jurisdiction."
§16911(10).  Section 16913(c)'s requirements point to the same con-
clusion: Nichols could not have appeared in person in Kansas "after"
leaving the State.  SORNA's drafters could have required sex offend-

ers to deregister in their departure jurisdiction before leaving the country had that been their intent. Pp. 4–6.

(b) The Government resists this straightforward reading. It argues that a jurisdiction where an offender registers remains "involved" even after the offender leaves, but that would require adding the extra clause "where the offender appears on a registry" to §16913(a). Also unconvincing is the claim that §16914(a)(3)'s requiring the offender to provide each address where he "*will* reside" shows that SORNA contemplates the possibility of an offender's updating his registration before he actually moves. That provision merely lists the pieces of information to be updated; it says nothing about an obligation to update in the first place. Finally, the Government's argument that Nichols actually experienced two "changes" of residence—first, when he turned in his apartment keys in Kansas, and second, when he checked into his Manila hotel—is inconsistent with ordinary English usage. Pp. 6–7.

(c) Although "the most formidable argument concerning the statute's purposes [cannot] overcome the clarity [found] in the statute's text," *Kloeckner* v. *Solis*, 568 U. S. ___, ___, n. 4, the Court is mindful of those purposes and notes that its interpretation is not likely to create deficiencies in SORNA's scheme. Recent legislation by Congress, as well as existing state-law registration requirements, offers reassurance that sex offenders will not be able to escape punishment for leaving the United States without notifying their departure jurisdictions. Pp. 7–8.

775 F. 3d 1225, reversed.

ALITO, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 15–5238

LESTER RAY NICHOLS, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT

[April 4, 2016]

JUSTICE ALITO delivered the opinion of the Court.

Lester Ray Nichols, a registered sex offender living in the Kansas City area, moved to the Philippines without notifying Kansas authorities of his change in residence. For that omission Nichols was convicted of failing to update his sex-offender registration, in violation of 18 U. S. C. §2250(a). We must decide whether federal law required Nichols to update his registration in Kansas to reflect his departure from the State.

I

A

Following the high-profile and horrific rape and murder of 7-year-old Megan Kanka by her neighbor, States in the early 1990's began enacting registry and community-notification laws to monitor the whereabouts of individuals previously convicted of sex crimes. See *Smith* v. *Doe*, 538 U. S. 84, 89 (2003); Filler, Making the Case for Megan's Law, 76 Ind. L. J. 315, 315–317 (2001). Congress followed suit in 1994 with the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 108 Stat. 2038, 42 U. S. C. §14071 *et seq.* (1994

ed.). Named after an 11-year-old who was kidnapped at
gunpoint in 1989 (and who remains missing today), the
Wetterling Act conditioned federal funds on States' enact-
ing sex-offender registry laws meeting certain minimum
standards. *Smith*, 538 U. S., at 89–90. "By 1996, every
State, the District of Columbia, and the Federal Govern-
ment had enacted some variation of" a sex-offender regis-
try. *Id.,* at 90.

In 2006, Congress replaced the Wetterling Act with the
Sex Offender Registration and Notification Act (SORNA),
120 Stat. 590, 42 U. S. C. §16901 *et seq.* Two changes are
pertinent here. First, Congress made it a federal crime for
a sex offender who meets certain requirements to "know-
ingly fai[l] to register or update a registration as required
by [SORNA]." 18 U. S. C. §2250(a)(3); see *Carr* v. *United
States*, 560 U. S. 438, 441–442 (2010). Second, Congress
amended the provisions governing the registration re-
quirements when an offender moves to a different State.
The original Wetterling Act had directed States to require
a sex offender to "register the new address with a desig-
nated law enforcement agency in another State *to which
the person moves* not later than 10 days after such person
establishes residence in the new State, if the new State
has a registration requirement." 42 U. S. C. §14071(b)(5)
(1994 ed.) (emphasis added). Congress later amended this
provision to direct States to require a sex offender to
"report the change of address to the responsible agency *in
the State the person is leaving*, and [to] comply with any
registration requirement in the new State of residence."
42 U. S. C. §14071(b)(5) (2000 ed.) (emphasis added).

SORNA repealed this provision of the Wetterling Act.
120 Stat. 600. In its place, federal law now provides:

"A sex offender shall, not later than 3 business days
after each change of name, residence, employment, or
student status, appear in person in *at least 1 jurisdic-*

*tion involved pursuant to subsection (a)* and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." 42 U. S. C. §16913(c) (emphasis added).

Subsection (a), in turn, provides: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." §16913(a). A sex offender is required to notify only one "jurisdiction involved"; that jurisdiction must then notify a list of interested parties, including the other jurisdictions. §§16921(b)(1)–(7). The question presented in this case is whether the State a sex offender leaves—that is, the State where he formerly resided—qualifies as an "involved" jurisdiction under §16913.

B

In 2003, Nichols was convicted of traveling with intent to engage in illicit sexual conduct with a minor, in violation of 18 U. S. C. §2423(b). Although his offense predated SORNA's enactment, Nichols was nevertheless required upon his eventual release in December 2011 to register as a sex offender in Kansas, where he chose to settle. 28 CFR 72.3 (2015). Nichols complied with SORNA's registration requirements—until November 9, 2012, when he abruptly disconnected all of his telephone lines, deposited his apartment keys in his landlord's drop-box, and boarded a flight to Manila. When Nichols was a no-show at mandatory sex-offender treatment, a warrant was issued revoking his supervised release. With the assistance of American security forces, local police in Manila arrested Nichols in December 2012, and federal marshals then escorted him back to the United States, where he was charged with one count of "knowingly fail[ing] to register or update a registration as required by [SORNA]," 18 U. S. C. §2250(a)(3). After unsuccessfully moving to dismiss the

indictment on the ground that SORNA did not require him to update his registration in Kansas, Nichols conditionally pleaded guilty, reserving his right to appeal the denial of his motion.

The Tenth Circuit affirmed. 775 F. 3d 1225 (2014). Following its own precedent in *United States* v. *Murphy*, 664 F. 3d 798 (2011), the panel held that when a sex offender "'leaves a residence in a state, and then leaves the state entirely, that state remains a jurisdiction involved'" under §16913. 775 F. 3d, at 1229. Over four dissenting votes, the court denied Nichols's petition for rehearing en banc. 784 F. 3d 666 (2015). In adhering to *Murphy*, the Tenth Circuit reentrenched a split created by the Eighth Circuit's decision in *United States* v. *Lunsford*, 725 F. 3d 859 (2013). Remarkably, *Lunsford* also involved a sex offender who moved from the Kansas City area—on the Missouri side—to the Philippines. Contra the Tenth Circuit's decision below, *Lunsford* held that that defendant had no obligation to update his registration in Missouri because a sex offender is required "to 'keep the registration current' in the jurisdiction where he 'resides,' not a jurisdiction where he 'resided.'" *Id.*, at 861 (citation omitted). We granted certiorari to resolve the split. 577 U. S. ___ (2015).

## II

As noted, Nichols was required to "appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of" his change of residence. 42 U. S. C. §16913(c). Subsection (a) mentions three possible jurisdictions: "where the offender resides, where the offender is an employee, and where the offender is a student." §16913(a). The Philippines is not a "jurisdiction" under SORNA; no foreign country is. See §16911(10). Putting these provisions together, SORNA therefore requires a sex offender who changes his resi-

dence to appear, within three business days of the change, in person in at least one jurisdiction (but not a foreign country) where he resides, works, or studies, and to inform that jurisdiction of the address change. Critically, §16913(a) uses only the present tense: "resides," "is an employee," "is a student." A person who moves from Leavenworth to Manila no longer "resides" (present tense) in Kansas; although he once *resided* in Kansas, after his move he "resides" in the Philippines. It follows that once Nichols moved to Manila, he was no longer required to appear in person in Kansas to update his registration, for Kansas was no longer a "jurisdiction involved pursuant to subsection (a)" of §16913.

The requirement in §16913(c) to appear in person and register "not later than 3 business days *after* each change of . . . residence" points to the same conclusion. Nichols could not have appeared in person in Kansas "after" leaving the State. To be sure, one may argue that the day before his departure was "not later than 3 business days after" his departure, but no one in ordinary speech uses language in such a strained and hypertechnical way.

If the drafters of SORNA had thought about the problem of sex offenders who leave the country and had sought to require them to (de)register in the departure jurisdiction, they could easily have said so; indeed, that is exactly what the amended Wetterling Act had required. 42 U. S. C. §14071(b)(5) (2000 ed.) ("report the change of address to the responsible agency in the State the person is leaving"). It is also what Kansas *state* law requires: Nichols had a duty to notify, among other entities, "the registering law enforcement agency or agencies *where last registered*." Kan. Stat. Ann. §22–4905(g) (2014 Cum. Supp.) (emphasis added). Congress could have chosen to retain the language in the amended Wetterling Act, or to adopt locution similar to that of the Kansas statute (and echoed in the statutes of many other States, cf. Brief for Petitioner 6,

n. 1). It did neither. SORNA's plain text—in particular, §16913(a)'s consistent use of the present tense—therefore did not require Nichols to update his registration in Kansas once he no longer resided there.

## III

The Government resists this straightforward reading of the statutory text, arguing instead that once an offender registers in a jurisdiction, "that jurisdiction necessarily *remains* 'involved pursuant to subsection (a),' because the offender continues to appear on its registry as a current resident." Brief for United States 24. But §16913(a) lists only three possibilities for an "involved" jurisdiction: "where the offender resides, where the offender is an employee, and where the offender is a student." Notably absent is "where the offender appears on a registry." We decline the Government's invitation to add an extra clause to the text of §16913(a). As we long ago remarked in another context, "[w]hat the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." *Iselin* v. *United States*, 270 U. S. 245, 251 (1926). Just so here.

Relatedly, the Government points out that among the pieces of information a sex offender must provide as part of his registration is "[t]he address of each residence at which the sex offender resides *or will reside*." §16914(a)(3) (emphasis added). The use of the future tense, says the Government, shows that SORNA contemplates the possibility of an offender's updating his registration before actually moving. But §16914(a) merely lists the pieces of information that a sex offender must provide if and when he updates his registration; it says nothing about whether the offender has an obligation to update his registration in the first place.

Finally, the Government argues that Nichols actually experienced not one but two "changes" of residence—the first when he "abandoned" his apartment in Leavenworth by turning in his keys, and the second when he checked into his hotel in Manila. On the Government's view, a sex offender's "residence information will change when he leaves the place where he has been residing, and it will change again when he arrives at his new residence. He must report both of those changes in a timely fashion." Brief for United States 21. We think this argument too clever by half; when someone moves from, say, Kansas City, Kansas, to Kansas City, Missouri, we ordinarily would not say he moved twice: once from Kansas City, Kansas, to a state of homelessness, and then again from homelessness to Kansas City, Missouri. Nor, were he to drive an RV between the cities, would we say that he changed his residence *four* times (from the house on the Kansas side of the Missouri River to a state of homelessness when he locks the door behind him; then to the RV when he climbs into the vehicle; then back to homelessness when he alights in the new house's driveway; and then, finally, to the new house in Missouri). And what if he were to move from Kansas to California and spend several nights in hotels along the way? Such ponderings cannot be the basis for imposing criminal punishment. "We interpret criminal statutes, like other statutes, in a manner consistent with ordinary English usage." *Abramski* v. *United States*, 573 U. S. \_\_\_, \_\_\_ (2014) (Scalia, J., dissenting) (slip op., at 4); *Flores-Figueroa* v. *United States*, 556 U. S. 646, 652 (2009). In ordinary English, Nichols changed his residence just once: from Kansas to the Philippines.

We are mindful that SORNA's purpose was to "make more uniform what had remained 'a patchwork of federal and 50 individual state registration systems,' with 'loopholes and deficiencies' that had resulted in an estimated

100,000 sex offenders becoming 'missing' or 'lost.'" *United States* v. *Kebodeaux*, 570 U. S. ___, ___–___ (2013) (slip op., at 11–12) (citation omitted). Yet "even the most formidable argument concerning the statute's purposes could not overcome the clarity we find in the statute's text." *Kloeckner* v. *Solis*, 568 U. S. ___, ___, n. 4 (2012) (slip op., at 14, n. 4).

Our interpretation of the SORNA provisions at issue in this case in no way means that sex offenders will be able to escape punishment for leaving the United States without notifying the jurisdictions in which they lived while in this country. Congress has recently criminalized the "knowin[g] fail[ure] to provide information required by [SORNA] relating to intended travel in foreign commerce." International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders, Pub. L. 114–119, §6(b)(2), 130 Stat. 23, to be codified at 18 U. S. C. §2250(b). Such information includes "anticipated dates and places of departure, arrival, or return[;] carrier and flight numbers for air travel[;] destination country and address or other contact information therein," et cetera. §6(a)(1)(B), 130 Stat. 22, to be codified at 42 U. S. C. §16914(a)(7). Both parties agree that the new law captures Nichols's conduct. Supp. Brief for United States 3; Reply Brief 10; Tr. of Oral Arg. 18, 35. And, of course, Nichols's failure to update his registration in Kansas violated state law. Kan. Stat. Ann. §22–4905(g). We are thus reassured that our holding today is not likely to create "loopholes and deficiencies" in SORNA's nationwide sex-offender registration scheme.

*        *        *

The judgment of the Court of Appeals for the Tenth Circuit is reversed.

*It is so ordered.*