In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3095

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

LENA RAE HASLAGE,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 16-CR-40 — **Charles N. Clevert, Jr.**, *Judge.*

No. 16-3196

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

TAUNGRA NICOLE TONEY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 16-CR-43 — **J.P. Stadtmueller**, *Judge.*

———————————

ARGUED DECEMBER 6, 2016 — DECIDED APRIL 3, 2017

———————————

Before WOOD, *Chief Judge*, and ROVNER and SYKES, *Circuit Judges*.

WOOD, *Chief Judge*. In *Nichols v. United States*, 136 S.Ct. 1113 (2016), the Supreme Court held that a sex offender was not required under the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250, to update his registration in the state where he had been residing, after he left his home and moved to a new place. In *Nichols*, the new place was outside the United States, in the Philippines. The two cases we have consolidated for disposition on appeal present the more conventional scenario of a person who moves from one state in the United States to another—in Lena Rae Haslage's case, from Wisconsin to Washington State, and in Taungra Nicole Toney's case, from Wisconsin to Minnesota. In both cases, the district courts dismissed the indictments for improper venue. The government has appealed. We conclude, however, that the district courts properly applied *Nichols* and that their judgments must be affirmed.

## I

Little more need be said about the underlying facts of the two cases. Haslage had been living in Wisconsin, where she was registered as a sex offender based on a 2006 conviction for two offenses. After her initial registration, she updated her file at least eight times in Wisconsin. She was released on parole in February 2015. Not long thereafter, in May, she cut off

her electronic monitoring bracelet and took a train to Spokane, Washington. She did not register as required by SORNA and state law in Washington.

Toney's story is similar. She was convicted in 1999 in Minnesota for prostitution-related offenses. These required her to register under SORNA as a sex offender. By 2015, she was living in Wisconsin, where she was registered. In February of that year, however, she left Wisconsin and traveled to Minnesota, where she took up residence. In violation of SORNA, she failed to register in Minnesota.

In March 2016, a federal grand jury in the Eastern District of Wisconsin indicted both women in separate cases, each of which contained one count of failure to register as a sex offender in violation of SORNA. Each moved to dismiss on the ground that *Nichols* established that the government could not establish venue in Wisconsin, because no offense or part of an offense was committed in Wisconsin. Both district courts granted the motion and dismissed for improper venue, and these appeals on behalf of the government followed.

## II

We begin with some basics. The Sixth Amendment to the U.S. Constitution guarantees a defendant the right to trial by "an impartial jury of the state and district wherein the crime shall have been committed." Reflecting this constitutional command, the Federal Rules of Criminal Procedure also state that "the government must prosecute an offense in a district where the offense was committed." FED. R. CRIM. P. 18. This does not mean that there is one and only one district in which a particular crime may be prosecuted. As we have recognized,

"[m]any offenses touch more than one district. For these, Congress may, consistently with the Constitution, authorize venue in any district where conduct that is part of the offense occurred." *United States v. Orona-Ibarra*, 831 F.3d 867, 872 (7th Cir. 2016). The question before us is thus whether any conduct that is part of the offense defined by 18 U.S.C. § 2250 occurred in the Eastern District of Wisconsin. If yes, then the district courts erred; if no, then their judgments were correct.

SORNA states that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). In order to keep her registration current, the offender must:

> not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.

*Id.* § 16913(c). The notified jurisdiction then has the responsibility to provide that information to all other jurisdictions in which the offender is required to register.

Failure to register as required is a crime, punishable by a fine or a prison term of up to 10 years. 18 U.S.C. § 2250(a). The statute covers (1) any sex offender required to register under SORNA, who (2) travels in interstate or foreign commerce, and who (3) knowingly fails to register or update a registration as required by SORNA. In an earlier SORNA case, the Supreme Court held that liability under section 2250 cannot be predicated on pre-SORNA travel. *Carr v. United States*,

560 U.S. 438 (2010). The key to our case, however, is the third element. To understand that better, we take a closer look at *Nichols*.

The question before the Court in *Nichols* was "whether federal law required Nichols to update his registration in Kansas to reflect his departure from the State." 136 S.Ct. at 1115. The Court observed that an earlier statute had imposed the duty to report a change of address to the responsible agency in the state from which the offender was leaving, but that SORNA repealed that part of the law and replaced it with the language we quoted earlier. The Court thus reformulated its question to be "whether the State a sex offender leaves—that is, the State where he formerly resided—qualifies as an 'involved' jurisdiction under § 16913." *Id.* at 1116.

The Court stressed the fact that 42 U.S.C. § 16913(a), which identifies "involved" jurisdictions, uses the present tense: "resides," "is an employee," and "is a student." It pointed out that a person (such as Nichols) who moves from Leavenworth, Kansas, to Manila, in the Philippines, no longer "resides" (present tense) in Kansas. It follows, the Court said, "that once Nichols moved to Manila, he was no longer required to appear in person in Kansas to update his registration, for Kansas was no longer a 'jurisdiction involved pursuant to subsection (c)' of § 16913." *Id.* at 1117. The Court found further support for its conclusion in the fact that an offender who moves to a new place has three business days after each change of residence to register in the new place. "SORNA's plain test … therefore did not require Nichols to update his registration in Kansas once he no longer resided there." *Id.* at 1118. In short, Nichols committed no offense in Kansas, because his travel alone did not violate SORNA. It is the change

of residence that results from the travel, coupled with the failure to register in the *new* place within the allotted three days, that SORNA reaches.

Like the two district courts whose decisions we are reviewing, we read *Nichols* to hold that the act of leaving one's home in State A and traveling to State B is not a separable part of the offense defined in section 2250 for purposes of criminal venue. Indeed, in countless cases the act of traveling from State A to State B will not be the predicate for any offense at all. SORNA does not prohibit all interstate travel; it does not require registration by an offender who travels from Chicago to Hammond, Indiana, to attend a Saturday wedding; and it places no obligation on the offender to do anything in the state of origin. (The Supreme Court noted that state law often requires more of an offender, but that is of no importance for purposes of federal criminal venue; it just means that SORNA has not left a gaping loophole in the registration system.)

By contrast, there are statutes in which the act of traveling from one state to another *is* the predicate for an offense. The Travel Act, for example, makes it a crime to travel interstate with the intent to commit a crime or other unlawful activity. See 18 U.S.C. § 1952; *United States v. O'Hara*, 301 F.3d 563 (7th Cir. 2002). The Mann Act, 18 U.S.C. §§ 2421–2424, criminalizes interstate travel or transportation with the intent to engage in criminal sexual activity. In cases involving violations of those statutes, the crime begins in the state where the defendant set out with the intent to cross a state line and commit the crime.

But section 2250 is different; the premise of *Nichols* is that it does not criminalize travel with intent to commit a crime (*i.e.*, to fail to register), but rather the failure to register *after*

traveling. To illustrate this distinction, imagine a hypothetical case in which an offender living in Madison, Wisconsin, packs up all of her belongings and drives to the rural upper peninsula of Michigan with the intent to stay and live there "off the grid" without registering. But imagine that, once she has crossed the border, she hears a radio report about new sightings of wolverines and, terrified, returns to her previous residence in Madison the following day. She has committed no crime under section 2250.

On the other hand, if this hypothetical offender had also taken her minor nephew along with her with the intent that he engage in prostitution, she would have committed a crime under the Mann Act as soon as she crossed the border, whether or not she followed through on that plan. See 18 U.S.C. § 2423(a). It therefore makes sense to understand the Mann Act violation as beginning in Wisconsin. But when it comes to SORNA, *Nichols* tells us that no criminal conduct even *begins* until she fails to register in Michigan, even if her travel began in Wisconsin.

Another example may also help. As we have noted, section 2250 criminalizes a sex offender's failure to update his registration as required in 42 U.S.C. § 16913(a). The latter statute includes a duty to update each change in employment or student status. Imagine that an offender is subject to SORNA's registration requirements. He then moves across state lines from Indiana to Kentucky with the intent to look for a new job, and registers in Kentucky with his new address within two days. But when he gets a new job a week later, he fails to update his Kentucky registration. Presumably, he would be subject to prosecution under section 2250 for this failure, but

it is a strain to imagine that his crime had anything to do with Indiana.

The government argues that venue is appropriate in Wisconsin because the Supreme Court's decision in *United States v. Rodriguez-Moreno* instructs that venue is proper where the distinct parts or conduct of criminal conduct occurred. 526 U.S. 275, 279–82 (1999). But *Rodriguez-Moreno* involved a different statute, and the difference matters. There, the defendant was charged with violating 18 U.S.C. § 924(c)(1), which prohibits using or carrying a firearm during and in relation to any crime of violence. The defendant had kidnapped a victim in Texas and carried him through numerous states, including New Jersey and Maryland, but had used a gun only while in Maryland. *Id.* at 276–77. The Court emphasized that section 924(c) contained two *distinct* conduct elements: (1) using and carrying a gun and (2) the commission of a kidnapping. *Id.* at 280. Because the underlying and distinct crime of violence (kidnapping) spanned the entire geographic area of travel, venue was proper for the section 924(c) offense anywhere the kidnapping had continued.

As we know from the Court's guidance in *Carr*, the elements of a section 2250 violation for failure to register are sequential, not distinct or independent. See *United States v. Sanders*, 622 F.3d 779, 783 (7th Cir. 2010). A section 2250 SORNA violation for failure to register in one state does not span the entire geographic range of states the offender has traversed, even though it might have been necessary to pass through several states before reaching the destination. The interstate travel is a necessary precursor, but it is neither a distinct crime nor an element of the crime. If it were, and we therefore conceived of the crime as beginning in Wisconsin,

we could find ourselves faced with the absurd conclusion that venue could be laid anywhere the travel occurred or evidence of the travel was located (*i.e.,* in Haslage's case, perhaps in a state such as Montana or Idaho; in Nichols's case, perhaps California).

The government urges that travel is part and parcel of this crime, and so an essential (if not distinct) part of the prohibited conduct took place in Wisconsin. It would like us to examine the contacts with Wisconsin to see how substantial they are (*i.e.* where did the defendant's acts take place; what are the elements of the crime; what is the locus of the criminal activity; how suitable would each district be for trial). The glaring problem with this approach is that it starts from the proposition that there are at least two permissible venues. These considerations are of no help if the question on the table is whether one place is permissible at all. It is true that *Carr* held that the act of travel is "the very conduct at which Congress took aim." 560 U.S. at 454. But *Nichols* tells us that travel even to a place outside the United States did not transform the defendant's act of leaving Kansas into a Kansas-based SORNA violation. Furthermore, a closer look at *Carr* reveals that it is not discussing travel alone; rather, it is talking about those "who elude SORNA's registration requirements by traveling in interstate commerce." *Id.* at 456. That takes us right back to the question of the place where that act of eluding takes place. *Nichols* answers it: in the place of the new residence.

Haslage and Toney stand accused of committing offenses under SORNA, but the charges show that if they did, they did so in Washington State and Minnesota, not in Wisconsin. We see nothing to prevent the government from alerting the

U.S. Attorneys in the Eastern District of Washington and the District of Minnesota to these violations, and leaving it to those authorities to prosecute. Only in that sense are the present cases different from, and easier than, *Nichols*, because in *Nichols* the offender left the United States and attempted to find refuge in a place beyond the reach of SORNA. Here, the violations of section 2250 began, were carried out, and ended in the place of the new residence. If either defendant were to change residence again, we would have a different case, in which we can assume at least two venues would be possible. Even then, however, Wisconsin would not be a permissible choice based solely on the fact that they lived there before failing to register in a new place.

The judgments of the district courts are AFFIRMED.

SYKES, *Circuit Judge*, dissenting. I disagree that *Nichols v. United States*, 136 S. Ct. 1113 (2016), precludes the government from prosecuting these SORNA offenses in the Eastern District of Wisconsin. *Nichols* addressed the scope of the registration duty set forth in 42 U.S.C. § 16913, which establishes SORNA's basic registration requirements for sex offenders. The decision did not address the elements of the criminal offense under 18 U.S.C. § 2250(a), which makes it a crime to travel in interstate commerce and fail to register as required by SORNA. Nor did the Court touch on the venue question presented here.

Lester Ray Nichols, a federal sex offender,[1] was indicted by a federal grand jury in Kansas for violating § 2250(a) after he moved from Leavenworth, Kansas, to Manila, Philippines, without updating his sex-offender registration in Kansas. 136 S. Ct. at 1117. He moved to dismiss the indictment, arguing that SORNA did not require him to update his Kansas registration because he no longer resided in that jurisdiction and was neither an employee nor a student there. *Id.* The motion was denied and he conditionally pleaded guilty. The Tenth Circuit affirmed, agreeing with the district court that Nichols was required to update his Kansas registration. *Id.*

The Supreme Court reversed. The question before the Court was one of statutory interpretation: Does the text of SORNA require a sex offender when he moves out of state to

---

[1] He was convicted in 2003 of traveling in interstate commerce with intent to engage in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b). *Nichols v. United States*, 136 S. Ct. 1113, 1116–17 (2016).

return to the *departure* state to update his registration there? The specific language of the relevant SORNA provision, § 16913(c), states: "[N]ot later than 3 business days after each change of name, residence, employment, or student status" the offender must "appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section" and provide that jurisdiction with all changes in his registration information. A "jurisdiction involved" under subsection (a) is a "jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." § 16913(a). The use of the present tense was decisive. The Court held that

> [a] person who moves from Leavenworth to Manila no longer 'resides' (present tense) in Kansas; although he once *resided* in Kansas, after his move he 'resides' in the Philippines. It follows that once Nichols moved to Manila, he was no longer required to appear in person in Kansas to update his registration, for Kansas was no longer a 'jurisdiction involved pursuant to subsection (a)' of § 16913.

*Nichols*, 136 S. Ct. at 1117. In other words, if a sex offender moves to a new out-of-state residence, § 16913(c) does not require him to appear in the departure state to update his registration there.

As applied here, *Nichols* means only that Haslage and Toney had no legal obligation to update their Wisconsin registrations after they moved out of state.[2] But *Nichols* does

---

2 Though they did have a legal duty to appear in Washington and Minnesota, respectively, for that purpose.

*not* mean that the two women cannot be prosecuted in a Wisconsin district court for violating § 2250(a).

The specific language of § 2250(a) is as follows:

> (a) In general.—Whoever—
>
>> (1) is required to register under the Sex Offender Registration and Notification Act;
>>
>> (2)(A) is a sex offender [under SORNA] by reason of a conviction under Federal law … , the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>>
>> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>>
>> (3) knowingly fails to register or update a registration as required [by SORNA];
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

Take particular note of subsections (2)(A) and (B). A federal sex offender is directly subject to federal criminal liability for a knowing failure to update his registration; a *state* sex offender, on the other hand, is subject to federal criminal liability *only* if he travels in interstate commerce and knowingly fails to update his registration as required by SORNA. Haslage and Toney are state sex offenders. So for them, interstate travel is an essential element of the § 2250(a) offense. *Carr v. United States*, 560 U.S. 438, 445–46 (2010).

Criminal venue is governed by rule and statute and is also subject to constitutional limits. As my colleagues explain, Majority Op. at p. 3, Rule 18 of the Federal Rules of Criminal Procedure supplies the general rule: "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Rule 18 mirrors the Constitution's references to criminal venue.[3]

Here, however, venue is governed by a more specific provision: 18 U.S.C. § 3237(a). That statute provides a special venue rule for crimes begun in one district and completed in another:

> Except as otherwise expressly provided by enactment of Congress, *any offense* against the United States *begun in one district and completed in another,* or committed in more than one district, *may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.*

> *Any offense involving* the use of the mails, *transportation in interstate or foreign commerce,* or the importation of an object or person into the United States *is a continuing offense and,* except

---

[3] Article III of the Constitution provides: "The Trial of all Crimes … shall be held in the State where the said Crimes shall have been committed … ." U.S. CONST. art. III, § 2. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law … ." U.S. CONST. amend. VI. Haslage and Toney do not advance a constitutional argument here.

> as otherwise expressly provided by enactment of Congress, *may be inquired of and prosecuted in any district from, through, or into which such commerce*, mail matter, or imported object or person *moves*.

§ 3237(a) (emphases added). Prosecution in district court in Wisconsin is proper under both paragraphs of § 3237(a).

As I've explained, because Haslage and Toney are state sex offenders, interstate travel is an essential element of the § 2250(a) offenses charged in these cases. Without it there is no federal crime. Although the crimes were not completed until Haslage and Toney failed to appear in person in their new home states and provide that jurisdiction with their registration information, the offenses clearly began in Wisconsin when each woman commenced the interstate travel that is a necessary element of this crime.

My colleagues say that "interstate travel is a necessary precursor, but it is neither a distinct crime nor an element of the crime." Majority Op. at p. 8. Interstate travel is certainly not a distinct crime, but it *is* an element of the § 2250(a) offense for a state sex offender. That much is clear from *Carr*. There the Court parsed "the statute's *three* elements": (1) a qualifying sex offense, which triggers the registration duty; (2) interstate travel; and (3) a failure to register as required by SORNA. 560 U.S. at 446 (emphasis added). *Nichols* did not alter these elements of the crime for state sex offenders who are subject to SORNA requirements. Indeed, *Nichols* involved a federal sex offender, not a state sex offender. So the Court had no occasion to comment on whether *Carr*'s holding—that interstate travel is a required element of the § 2250(a) offense for state sex offenders—remains good law.

No Supreme Court decision suggests that it is not good law. *Carr*'s analysis of the elements of the § 2250(a) offense controls here.

The crimes charged in these two cases began in Wisconsin and were completed in the states of Washington (Haslage) and Minnesota (Toney). The venue statute plainly permits the government to prosecute a crime "begun in one district and completed in another" in "any district" in which it was "begun, continued, or completed." § 3237(a). Because the interstate travel—an element of the offense—began in Wisconsin, venue is proper in district court in Wisconsin.

As additional support for the government's choice of venue, § 3237(a) provides that any offense involving transportation in interstate commerce may be prosecuted "in any district from, through, or into which such commerce … moves." These crimes involved transportation in interstate commerce "from" Wisconsin, so the government may prosecute them in a district court in Wisconsin.

Accordingly, I would reverse the judgments of the district courts dismissing the indictments for improper venue. I respectfully dissent.