NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0430n.06

CASE NO. 17-2062

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 21, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ARNOLD BENNETT CALDWELL, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| *Defendant-Appellant*. | ) | |
| | ) | |

Before:  BATCHELDER, MOORE, and LARSEN, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  The defendant appeals the judgment entered following his guilty plea to failure to register as a sex offender.  We AFFIRM.

According to the PSR, back in the 1990's, defendant Arnold Caldwell was living in Tacoma, Washington, with his "common law wife," Kitt Henderson.  Henderson had a young niece who frequently stayed with them at the residence.  When the girl was six or seven years old, Caldwell molested her; shortly thereafter, Caldwell entered her bedroom at night and raped her. Caldwell continued to rape her every time she spent the night at the residence, which was "about every other week" from January 1994 until August 1998.  In 2001, when she was 14, the girl reported the molestation and rapes to a school counselor and eventually the police.

In March 2004, the State of Washington convicted Caldwell, via guilty plea, of "assault in the second degree with sexual motivation," which required Caldwell to register as a sex offender. The State court sentenced Caldwell to eight months in jail, but released him based on time served. About two months later, in May 2004, the State convicted Caldwell of failing to register as a sex offender and he spent another 26 days in jail.  In February 2006, the State again convicted Caldwell

of failing to register as a sex offender after he provided a false address (he had registered using the address of a bowling alley) and he spent another four months in jail. In June 2007, the State of Washington yet again convicted Caldwell of failing to register as a sex offender after he again provided a false address, and this time he spent 17 months in prison (charges regarding a second false address were dismissed as already incorporated). Following his release in 2008, he was returned to custody several times for various other offenses.

In October 2011, Caldwell decided to move to Chicago. He notified the State of Washington before departing and, upon arrival, registered with the Illinois Sex Offender Registry at the Chicago Police Department. But Caldwell did not comply with the annual registration requirements or ever update his registration. By 2013, Chicago police were looking for him. Eventually, police discovered that he had moved to Michigan without registering as a sex offender in Michigan, in violation of both the Federal Sex Offender Registration and Notification Act (SORNA) and Michigan law. When the police arrested Caldwell in February 2017, he admitted that he knew the registration requirements and knew that he was in violation, but complained that he was "tired" and had struggled to get the necessary documentation, particularly a birth certificate. He also admitted that he had not applied for Michigan identification or for welfare assistance because that would have given him away.

In March 2017, the federal grand jury indicted Caldwell on a charge of failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a) and 42 U.S.C. § 16901, *et seq.*[1] Caldwell pled guilty without a plea agreement. Prior to sentencing, the PSR tabulated Caldwell's criminal history score at 13, which corresponds to a criminal history category of VI. Coupled with a base offense level of 10, the PSR's advisory guideline range was 24 to 30 months in prison.

---

[1] On September 1, 2017, 42 U.S.C. § 16901 was re-classified as 34 U.S.C. § 20901.

Caldwell objected to the criminal-history-score tabulation's adding three points from the two convictions in 2004 (i.e., the "assault in the second degree with sexual motivation" and the first failure to register). Specifically, he argued that because the present offense occurred when he moved to Michigan in 2015, the tabulation should not have included the 2004 convictions because they had occurred over ten years earlier and were sentences of less than 13 months. *See* U.S.S.G. § 4A1.2(e)(1) & (2). The PSR responded that the offense actually began in Chicago in December 2013, on "the date law enforcement discovered [that he] was in violation of SORNA," and continued until his apprehension in Michigan in 2017, as "an ongoing offense that involved the same course of conduct," which put the 2004 convictions within ten years.

The PSR also explained that if Caldwell were correct, the new criminal history score would be ten, the new criminal history category would be V, and—coupled with the base offense level of ten—the new PSR advisory guideline range would be 21 to 27 months in prison.

At sentencing, Caldwell argued that the present offense, under SORNA, was based on interstate travel from Illinois to Michigan in 2015 and was not the same course of conduct as his failure to register in Illinois in 2013, under Illinois law, which involved no interstate travel. The district court disagreed, finding that Caldwell's failures to register on the states' sex-offender registries was a continuing course of conduct for which SORNA provides federal jurisdiction; SORNA does not create a national registry or a separate interstate-travel offense.

The court adopted the PSR's advisory guidelines range of 24 to 30 months, opined that a sentence "within the guideline range" would be appropriate, and sentenced Caldwell to 24 months. The court's stated reasons were Caldwell's repeated convictions for failing to register and the need for incremental punishment to ensure that he did not receive a lighter sentence for repeating the same violations. Specifically, the court expressed a need to sentence Caldwell to more than the 17 months in prison that he had received the last time he was sentenced for failing to register.

In this appeal, Caldwell contests the relevant-conduct determination that underlies his sentence. "Because a district court's relevant-conduct determination involves the application of law to facts, we review [it] de novo." *United States v. Amerson*, 886 F.3d 568, 573 (6th Cir. 2018) (citation omitted). "The government bears the burden of proving, by a preponderance of the evidence, that another offense constituted relevant conduct." *Id*. (citation omitted). For our purposes, "relevant conduct" means that the "acts and omissions . . . were part of the same course of conduct." U.S.S.G. § 1B1.3(a)(2). The Guidelines' commentary elaborates:

> *Same course of conduct*. Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a[n] . . . ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. . . . The nature of the offenses may also be a relevant consideration (e.g., a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals).

U.S.S.G. § 1B1.3, com. n. 5(B)(ii).

Caldwell contends that his failure to register as a sex offender in Michigan in 2015 was not a continuous course of conduct with his failure to maintain his registration as a sex offender in Illinois in 2013 (after he had originally registered in 2011). He argues that the 2013 and 2015 offenses are not similar, inasmuch as the latter involved interstate travel whereas the former did not; the former was a failure to update his registration while the latter was a failure to register at all; the two offenses occurred in different states; and the two offenses occurred two years apart. The district court was unpersuaded by these same arguments, finding the interstate travel aspect irrelevant to the substance of the offense and characterizing Caldwell's conduct as a longstanding refusal to register as required under the law, which was demonstrated by his repeated and continuous failures to register in multiple states (i.e., Washington, Illinois, and Michigan) as well

as his efforts to avoid detection in Michigan by choosing not to acquire Michigan identification or apply for state welfare assistance.

Caldwell's arguments fare no better here. SORNA itself disposes of Caldwell's contention that his 2013 Illinois offense and his 2015 Michigan offense are necessarily unconnected or unrelated because the former involved no interstate travel. While SORNA did not require Caldwell to inform the sex-offender registry in Chicago that he was departing Illinois, *see Nichols v. United States*, 578 U.S. --, 136 S. Ct. 1113 (2016), it nonetheless has two requirements that apply to Caldwell here: (1) that he maintain his registration while living in Chicago, *see* 42 U.S.C. § 16913(a) (eff. July 27, 2006 to Aug. 31, 2017) (the "sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides"); and (2) that he register in Michigan within three days of his relocation, such that Michigan could inform the Illinois registry of the change, *see* § 16913(c) (eff. July 27, 2006 to Aug. 31, 2017). Consequently, the 2013 Illinois offense and the 2015 Michigan offense are equally violations of SORNA and, given that one led directly into the other, they are inherently related.

This same analysis applies to Caldwell's frivolous argument that the offenses are unrelated because one was a failure to maintain or update his registration while the other was a failure to register at all. That distinction is not material. Finally, the fact that the offenses occurred in different states and, in Caldwell's view, two years apart, does not necessarily render them unconnected or unrelated. As the district court recognized, the "2013" offense actually spanned the time from when Caldwell first failed to update his Illinois registration—at least as early as October 2012 when his annual update was due—until he left Illinois for Michigan in 2015, at which point these offenses were separated by only the time it took to make the trip.

The district court was correct that the 2013 and 2015 offenses were a continuing course of conduct, i.e., "related conduct," which put the 2004 convictions within ten years of those offenses,

so as to include those points in the criminal history tabulation.  The court's advisory guidelines calculation was, therefore, correct and the within-guidelines sentence was reasonable.

We AFFIRM the judgment of the district court.