19-1895-cr
*United States v. Salvador Diaz*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2019

(Argued: June 24, 2020      Decided: July 22,2020)

Docket No. 19-1895-cr

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

SALVADOR DIAZ,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

CALABRESI, CHIN, and CARNEY, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the

Southern District of New York (Caproni, *J.*) convicting defendant-appellant of

failing to register as a sex offender under the Sex Offender Registration and Notification Act in violation of 18 U.S.C. § 2250(a). Defendant-appellant contends that the district court erred when it precluded him from collaterally attacking his predicate conviction, rejected his argument that the statute is unconstitutional, and denied his motion to dismiss for improper venue.

AFFIRMED.

Judge CALABRESI CONCURS in a separate opinion.

---

DANIEL NESSIM, Assistant United States Attorney (Elinor Tarlow, David Abramowicz, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, New York, *for Appellee*.

ROBIN C. SMITH (Leean Othman, *on the brief*), Law Office of Robin C. Smith, Esq., P.C., New York, New York, *for Defendant-Appellant*.

---

PER CURIAM:

Defendant-appellant Salvador Diaz appeals from a judgment of the district court entered June 26, 2019, following a jury trial, convicting him of failing to register as a sex offender under the Sex Offender Registration and

2

Notification Act ("SORNA"), 18 U.S.C. § 2250(a). He was sentenced principally to five years' probation, with the first three months to be served in home confinement. On appeal, Diaz challenges his conviction on the grounds that the district court erred when it precluded him from collaterally attacking his predicate conviction, rejected his argument that SORNA is unconstitutional, and denied his motion to dismiss for improper venue. For the reasons set forth below, we affirm the judgment of conviction.

## *BACKGROUND*

On December 1, 2000, Diaz, then a chief petty officer in the United States Navy, was convicted by court-martial of three counts of rape and two counts of indecent acts, in violation of Articles 120 and 134 of the Uniform Code of Military Justice. He was sentenced to nine years' imprisonment and a dishonorable discharge. Diaz has since pursued several challenges to his convictions, all unsuccessfully. *See, e.g.*, *United States v. Diaz*, 61 M.J. 594 (N-M. Ct. Crim. App. 2005) (appeal to the Navy-Marine Corps Court of Criminal Appeals); *United States v. Diaz*, 64 M.J. 180 (C.A.A.F. 2006) (appeal to the United States Court of Appeals for the Armed Forces); *Diaz v. United States*, 549 U.S. 1356

(2007) (petition for writ of certiorari to United States Supreme Court); *Diaz v. Inch*, No. 06-3306, 2007 WL 9754574 (D. Kan. Sept. 28, 2007) (habeas petition).

Following his release from prison, Diaz registered as a sex offender in New York.  Between 2014 and 2017, Diaz moved from New York to New Jersey and Virginia, but did not register in the latter two states.  On April 12, 2017, the Government indicted Diaz for violating § 2250(a)(2)(A)  -- the "Sex Offense Clause" -- because he "changed his residence without updating his registered address in New York."  App'x at 27.  On March 2, 2018, Diaz, proceeding *pro se*, moved to dismiss the indictment, arguing that his predicate sex offender conviction was obtained in violation of the Constitution and that SORNA was unconstitutional.  The district court denied the motion.

On November 19, 2018, after the district court ordered the Government to address the effect of *Nichols v. United States*, 136 S. Ct. 1113 (2016), on Diaz's indictment, the Government filed a superseding indictment, charging Diaz with traveling in interstate commerce and failing to update his registration in the jurisdictions in which he resided after departing New York, in violation of § 2250(a)(2)(B) -- the "Interstate Travel Clause."  The district court set a pretrial motion deadline for December 21, 2018.  On February 25, 2019, Diaz again

4

moved to dismiss for, *inter alia*, improper venue. The district court denied the motion as untimely, without good cause to excuse waiver, and meritless.

Diaz was convicted following a jury trial and sentenced principally to five years' probation with the first three months to be served in home confinement. This appeal followed.

## DISCUSSION

### I.    *Collateral Challenges to Predicate Convictions under SORNA*

"We review questions of statutory interpretation *de novo*." *United States v. Ng Lap Seng*, 934 F.3d 110, 122 (2d Cir. 2019). In interpreting a statute, this Court gives "the statutory terms their ordinary or natural meaning." *United States v. Lockhart*, 749 F.3d 148, 152 (2d Cir. 2014) (internal quotation marks omitted).

The Supreme Court has routinely interpreted statutes that depend on a prior conviction as precluding defendants from collaterally challenging the predicate conviction in a subsequent proceeding. *See Custis v. United States*, 511 U.S. 485, 497 (1994) (holding that defendant may not collaterally attack prior conviction used to enhance sentence under the Armed Career Criminal Act because the statute does not explicitly permit such challenges); *Lewis v. United*

5

*States*, 445 U.S. 55, 67 (1980) (finding that felon-in-possession statute did not permit defendant to contest felony conviction in subsequent firearms prosecution because the statute "focus[es] not on reliability, but on the mere fact of conviction" as an element of the firearms offense); *cf. United States v. Mendoza-Lopez*, 481 U.S. 828, 840-41 (1987) (permitting collateral attack on predicate conviction despite the Immigration and Nationality Act's silence because judicial review of that conviction is otherwise unavailable). At least one circuit has addressed and rejected the contention that SORNA permits collateral challenges to sex offender convictions in its proceedings. *See United States v. Delgado*, 592 F. App'x 602, 603 (9th Cir. 2015) (mem. disp.).

We agree that SORNA does not permit defendants to collaterally challenge predicate sex offender convictions. SORNA is similar in structure to the statutes that the Supreme Court has held do not authorize collateral attacks of predicate convictions: SORNA requires the fact of a sex offender conviction as an element of the registration offense, *see Lewis*, 445 U.S. at 67, and lacks explicit terms authorizing a defendant to challenge the predicate conviction, *see Custis*, 511 U.S. at 491-92.[1] Moreover, Diaz's argument that SORNA permits collateral

---

[1]     Section 2250(a) provides: "Whoever-- (1) is required to register under [SORNA]; (2)(A) is a sex offender . . . by reason of a conviction under Federal law (including the

6

attack through 34 U.S.C. § 20911(5)(B) (the "Foreign Conviction Exception") is unpersuasive.[2] The Foreign Conviction Exception is by its terms limited to foreign convictions, and Congress did not intend to extend it to domestic convictions. *See id.* at 492 (applying *expressio unius* maxim that maintains "where Congress includes particular language in one section of a statute but omits it in another," we presume Congress acted intentionally (brackets omitted)).

Finally, Diaz already received judicial review of his sex offender conviction. Permitting him to attack his prior conviction would provide him an opportunity for judicial review not available to those who abide by SORNA's requirements. *See id.* at 497 (emphasizing the interest in not undermining a prior judgment "in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t]") (internal quotation marks omitted).

---

Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and (3) knowingly fails to register or update a registration as required by [SORNA]; shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2250(a).

[2] The Foreign Conviction Exception provides that "[a] foreign conviction is not a sex offense . . . if it was not obtained with sufficient safeguards for fundamental fairness and due process for the accused," 34 U.S.C. § 20911(5)(B), and mandates that the Attorney General establish "guidelines" to determine whether these convictions qualify as sex offenses, *see id.* § 20912(b).

Accordingly, the district court correctly held that a defendant in a SORNA prosecution may not collaterally challenge his underlying sex offender conviction.

## II.    *SORNA's Constitutionality under the Eighth and Fifth Amendments*

We review the district court's interpretation of the constitutionality of a federal statute *de novo*.  *See United States v. Henry*, 888 F.3d 589, 602 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 2615 (2019).

Diaz argues that SORNA violates the Eighth and Fifth Amendment's prohibitions on cruel and unusual punishments and double jeopardy because the statute imposes a "second punishment" on the same criminal conduct. Appellant's Br. at 49.[3]  He contends that the registration and notification provisions of sex offender registration statutes are punitive in nature because they result in "lifetime deprivations" of housing and employment and "public shaming."  Appellant's Br. at 44, 45.  He questions the efficacy of sex offender statutes, asserting that they are "an ineffective solution to tackling sex crimes." Appellant's Br. at 47.

---

[3]    The Eighth Amendment mandates against the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, while the Fifth Amendment prohibits subjecting a person "to be twice put in jeopardy of life or limb" for one criminal act, U.S. Const. amend. V.

As Diaz acknowledges, however, we held in *Doe v. Pataki* that the mandatory registration and notification requirements of New York State's Sex Offender Registration Act, which are analogous to SORNA's requirements, are nonpunitive in purpose and effect. *See* 120 F.3d 1263, 1285 (2d Cir. 1997), *as amended on denial of reh'g (*Sept. 25, 1997) (rejecting that the New York statute violates the Fifth Amendment's Ex Post Facto Clause). Moreover, the Supreme Court reached the same conclusion in its review of an Ex Post Facto challenge to Alaska's Sex Offender Registration Act. *See Smith v. Doe*, 538 U.S. 84, 105 (2003). Our precedent precludes the argument that sex offender registration and notification requirements are punitive, *see Pataki*, 120 F.3d at 1285, and the Supreme Court's similar conclusion in *Smith v. Doe* forecloses this Court's ability to revisit the *Pataki* decision, 538 U.S. at 105. Accordingly, the district court correctly concluded that SORNA does not violate the Fifth or Eighth Amendments.[4]

---

[4] Diaz further argues that the district court erred when it denied as untimely his motion to dismiss for improper venue. Diaz raised his venue objection more than two months after the pretrial motion deadline, and the district court held that his explanation for the delay -- that he did not understand venue and waiver as a *pro se* litigant -- did not constitute good cause to excuse waiver because the court had previously explained these concepts to him. *See United States v. O'Brien*, 926 F.3d 57, 83 (2d Cir. 2019). As a counseled litigant on appeal, Diaz waived any challenge to the district court's findings on this issue because he failed to address it in his opening brief.

*CONCLUSION*

For the foregoing reasons, the district court's judgment is

**AFFIRMED**.

---

*See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 192 (2d Cir. 2015). Accordingly, Diaz's improper venue challenge fails.

GUIDO CALABRESI, *Circuit Judge*, concurring:

I join the court's opinion in full. I write separately simply to state my belief that our court was wrong in *Doe v. Pataki*, 120 F.3d 1263 (2d Cir. 1997), and the Supreme Court equally wrong in *Smith v. Doe*, 538 U.S. 84 (2003). The notion that the Sex Offender Registration and Notification Act ("SORNA") and its equivalents are not punitive seems to me to be quite mistaken.

I cannot do better in stating why it is mistaken than to quote from the opinion by then-District Judge Chin, now presiding on this panel. Like me, he is bound by the decision of this court which reversed him, and by the Supreme Court in reviewing an analogous statute. But as far as I am concerned, his observations about the punitive nature of public notification requirements are still spot on.

Public notification of the type required by the New York State Sex Offender law and SORNA "is the modern-day equivalent of branding and shaming. . . . [T]oday's lawmakers—like their colonial counterparts—are counting on 'the invisible whip of public opinion' to deter the sex offender from future wrongdoing." *Doe v. Pataki*, 940 F. Supp. 603, 625 (S.D.N.Y. 1996), *rev'd*, 120 F.3d 1263 (2d Cir. 1997). Notification statutes also have "resulted in the banishment of sex offenders both literally and psychologically. Not only have sex offenders literally been forced to relocate to different towns and even different states, public notification has made it difficult if not impossible for them to reintegrate into society." *Id.* at 626. Such requirements increase punishment "simply because [they] increase[] the penalty—or suffering in right, person, or property—imposed on a sex offender for his crime." *Id.* Notification prevents "sex offenders from finding a home, getting a job, and reintegrating into society." *Id.* at 628. Moreover,

whatever one thinks of the goals, notification provisions in sex offender statutes do promote three of what many view as the traditional goals of punishment: deterrence, retribution, and incapacitation. *Id.* at 628–29; *see id.* at 629 ("The ostracism, public humiliation, and other harsh consequences that result from public notification certainly deter future criminal conduct. Moreover, public notification also serves the goal of retribution by giving the sex offenders what many believe they deserve. Finally, public notification has the effect of incapacitating sex offenders as it restricts their ability to reenter society and indeed results in their banishment from the community.").

As Judge Chin succinctly concluded, "one could argue, depending on the crime involved, that these sex offenders deserved this treatment. The question before the Court, however, is not whether they did, but whether the effect of public notification is to punish. Clearly, it is." *Id.* at 627 (citation omitted).

Beyond this case, I believe it to be a fundamental mistake to treat as nonpenal, and perhaps civil, any number of laws the effects of which exceed in severity those of many quite severe criminal laws. Treating deportation as civil— even though, as the Supreme Court has recognized, it often is tantamount to "banishment or exile"—is one egregious example. *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947). The rules governing habeas are another. Interestingly, the Supreme Court has indicated that certain limits derived from the Eighth Amendment should apply to civil forfeitures. *See Austin v. United States*, 509 U.S. 602 (1993). Analogously, the Court has put limits on tort damages that it deems punitive. *See Philip Morris USA v. Williams*, 549 U.S. 346 (2007) (holding that a jury may not, consistent with due process, award punitive damages based upon its

desire to punish the defendant for harming persons who are not parties to the suit); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (holding that an award of $145 million in punitive damages on a $1 million compensatory verdict violated due process); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 585–86 (1996) (holding that a $2 million punitive damages award was "grossly excessive" and therefore exceeded the constitutional limit).

For reasons well expressed by Judge Posner in *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003), and in the academic literature, not all extracompensatory damages should be treated as punitive. *See* A. Mitchell Polinsky & Steven Shavell, *Punitive Damages: An Economic Analysis*, 111 Harv. L. Rev. 869 (1998); Catherine M. Sharkey, *Punitive Damages as Societal Damages*, 113 Yale L.J. 347 (2003); Guido Calabresi, *The Complexity of Torts—The Case of Punitive Damages*, in Exploring Tort Law 333 (M. Stuart Madden ed., 2005); *see also generally Ciraolo v. City of New York*, 216 F.3d 236, 244 (2d Cir. 2000) (Calabresi, J., concurring).

But as Thomas Colby has explained, some extracompensatory damages indeed are punitive. *See* Thomas B. Colby, *Clearing the Smoke from* Philip Morris v. Williams: *The Past, Present, and Future of Punitive Damages*, 118 Yale L.J. 392 (2008). And one can sympathize with the Supreme Court's desire to impose constitutional limits in such instances. One only wishes that the Supreme Court applied analogous reasoning to situations in which those bearing the punitive effects were not large corporations but individuals without similar means.