


FILED

Jun 19 2025, 10:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 25S-PL-152

## Gage Peters,

*Appellant (Plaintiff below)*

–v–

## Dennis J. Quakenbush, II, in his official capacity as Hamilton County Sheriff, and Lloyd Arnold, in his official capacity as Commissioner of the Indiana Department of Correction

*Appellees (Defendants below)*

Argued: February 12, 2025 | Decided: June 19, 2025

Appeal from the Hamilton Superior Court
No. 29D03-2308-PL-7853
The Honorable William J. Hughes, Judge
The Honorable Andrew R. Bloch, Magistrate

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-PL-405

**Opinion by Justice Goff**

Chief Justice Rush and Justice Massa concur.
Justice Molter concurs in part and in the judgment with separate opinion.
Justice Slaughter concurs in the judgment with separate opinion.

**Goff, Justice.**

The Indiana Sex Offender Registration Act (or SORA) requires a person to register with local law enforcement if that person is a "sex or violent offender" who resides, works, or attends school in Indiana.[1] A "sex or violent offender" includes a person "required to register as a sex or violent offender in any jurisdiction."[2] A person meeting that definition must "register for the period required by the other jurisdiction or the period described in" code section 11-8-8-19, "whichever is longer."[3] The question here is whether such a person must register for the period required by the other jurisdiction even though they committed no offense in the other jurisdiction that imposed the triggering registration requirement. We answer that question in the affirmative. But because the plaintiff here is not *currently* required to register in another jurisdiction, we hold that he need not currently register as a sex or violent offender in Indiana. We thus reverse the trial court and remand for entry of summary judgment in plaintiff's favor.

# Facts and Procedural History

In October 2013, Gage Peters stood convicted of criminal sexual abuse in the State of Illinois. This conviction came with a ten-year sex-offender-registration requirement in that state—a period beginning on October 15,

---

[1] Ind. Code § 11-8-8-7(a).

[2] I.C. § 11-8-8-5(b)(1).

[3] I.C. § 11-8-8-19(f).

2013. In August 2016, Peters moved to Indiana and complied with his duty to register here. Soon after he settled in the state, the Department of Correction advised Peters of his ten-year registration requirement under the SORA. This obligation, the Department added, was "subject to modification" should registration requirements change. App. Vol. 2, p. 18.

From September 28 through October 4, 2021, after he had moved back to Illinois in January of that year, Peters vacationed in the State of Florida. Florida requires a sex offender to register in that state if they take up "temporary residence" for a period of three days or more. Fla. Stat. Ann. § 775.21(2)(n) (West 2024); *id.* § 775.21(6). In compliance with this law, Peters signed a "Notice of Sexual Predator and Sexual Offender Obligations" form in which he agreed to "maintain registration for the duration of [his] life." App. Vol. 2, pp. 21, 23 (citing Fla. Stat. § 943.0435(11); *id.* § 775.21(6)(l)). The form also advised Peters that his registration would be published on the state's sexual-offender website. *Id.* at 23. A search of that site today lists Peters' legal status as "Released – Subject to Registration," which means that Peters is "[n]o longer under any form of confinement, supervision or any other court imposed sanction" but is "[s]till required to register in accordance with Florida law."[4] After his vacation, Peters returned to Illinois and continued with the requirements of his registration there.

In May 2022, Peters moved back to Indiana and registered with the Hamilton County Sheriff's Department. That office's "Sex or Violent Offender Registration Form" initially listed the end date for Peters' registration obligation as October 15, 2023. *Id.* at 28–29. But in February of that year, the sheriff's department notified Peters that he had to register as a lifetime sex offender "due to the State of Florida registration laws when [he] resided there" during his vacation. *Id.* at 35. In response, Peters sued for declaratory judgment against the Hamilton County Sheriff and the Department of Correction (collectively, the State), seeking relief from the

---

[4] Florida Department of Law Enforcement, Sexual Offenders and Predators Search, https://offender.fdle.state.fl.us (last visited June 19, 2025).

change in his registration requirement. The State moved for summary judgment (converted from a motion to dismiss), which the trial court granted after finding no issue of material fact as to whether Peters "is required to register for life in the state of Indiana because he is required to do so in the state of Florida." *Id.* at 134.

In a split opinion, the Court of Appeals affirmed, holding that "the plain language" of code subsection 11-8-8-19(f) (or the Jurisdiction Statute) "compels registration for individuals with out-of-state registration obligations regardless of the source of those obligations." *Peters v. Quakenbush*, 243 N.E.3d 1145, 1151 (Ind. Ct. App. 2024). In so holding, the majority expressly disagreed with and declined to follow the decision in *Marroquin v. Reagle*. *Id.* at 1149; *see* 228 N.E.3d 1149, 1150–51 (Ind. Ct. App. 2024), *trans. denied*. And in rejecting Peters' claim that his departure from Florida relieved him of his obligations there, the majority pointed to his subject-to-registration status on Florida's sex-offender website, adding that, it matters not whether he needs to report in person there. *Peters*, 243 N.E.3d at 1151.

Concurring in result, Judge Bailey agreed with the court's plain reading of the Jurisdiction Statute but lamented "the lack of any constraint upon blanket enforcement in this State regardless of where the crime originated and how onerous the subsequent reporting requirements are." *Id.* at 1152. In dissent, Judge Mathias would have "adopt[ed] the reasoning set out in *Marroquin*" to find the Jurisdiction Statute inapplicable when there's "no independent requirement to register" in the other jurisdiction. *Id.* (internal quotation marks and citation omitted). Stressing Judge Bailey's observation that the Jurisdiction Statute places the court "in the position of imposing a lifetime requirement of registration for conduct that is twice removed from this jurisdiction," Judge Mathias—invoking the absurdity doctrine—concluded that the legislature could not have intended the result here "based on a one-week vacation" in another state. *Id.* at 1152–53.

Peters petitioned for transfer, which we now grant, vacating the Court of Appeals decision. *See* Ind. Appellate Rule 58(A).

# Standard of Review

When reviewing a summary-judgment ruling, this Court applies the same standard as the trial court: summary judgment is appropriate only when the evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ballard v. Lewis*, 8 N.E.3d 190, 193 (Ind. 2014). When, like here, a challenge to the summary-judgment ruling presents only questions of statutory interpretation, we review those issues de novo. *Id.*

# Discussion and Decision

During the early to mid-1990s, several states enacted registry and community-notification laws designed to protect the public from the danger and propensity for recidivism of convicted sex offenders. Daniel M. Filler, *Making the Case for Megan's Law: A Study in Legislative Rhetoric*, 76 Ind. L.J. 315, 316–17 (2001). Indiana was no exception. And in 1994, the General Assembly adopted "Zachary's Law," requiring a person convicted of certain sex offenses to register in the state as a "sex offender."[5] *Wallace v. State*, 905 N.E.2d 371, 374–75 (Ind. 2009); *see* Pub. L. No. 11-1994, § 7, 1994 Ind. Acts 301, 307–10 (codified as amended at I.C. §§ 11-8-8-0.2 through -23).

Since its inception, the SORA has undergone several amendments. Under the law today, a person must "register"—*i.e.*, "report in person" to local law enforcement—if that person is a "sex or violent offender" who (1) "resides in" the state, (2) works or intends to work in the state, or (3) attends school or plans to attend school in the state. I.C. § 11-8-8-4; I.C. § 11-8-8-7(a). A "sex or violent offender" refers to a person convicted of one of several enumerated Indiana offenses (including various sexual crimes)

---

[5] For extended background on the adoption of the Indiana Sex Offender Registration Act, along with a summary of subsequent amendments to the Act, see *Wallace v. State*, 905 N.E.2d 371, 374–77 (Ind. 2009).

or a "substantially similar offense committed in another jurisdiction." I.C. § 11-8-8-5(a); I.C. § 1-1-2-4(b)(3). *See also* I.C. § 11-8-8-4.5(a) (setting forth an analogous definition for a "sex offender"). The term also includes a "person who is required to register as a sex or violent offender in any jurisdiction." I.C. § 11-8-8-5(b)(1). *See also* I.C. § 11-8-8-4.5(b)(1) (defining a "sex offender" to include a "person who is required to register as a sex offender in any jurisdiction").

If a person "is required to register as a sex or violent offender in any jurisdiction," that person must "register for the period required by the other jurisdiction or the period described in this section, whichever is longer." I.C. § 11-8-8-19(f). By imposing such a requirement, "Indiana avoids becoming a safe haven for offenders attempting to evade their obligation." *Tyson v. State*, 51 N.E.3d 88, 96 (Ind. 2016). The parties here dispute whether this requirement applies to a person residing, working, or attending school in Indiana even though that person committed no offense in the other jurisdiction that imposed the triggering registration requirement. In Part I of our opinion, we conclude that it does. But whether the Jurisdiction Statute applies to Peters is another question. In Part II, we hold that, because Peters is not *currently* required to register in another jurisdiction, the Jurisdiction Statute does not apply to him.

## I. The Jurisdiction Statute applies to a person with out-of-state-registration obligations, regardless of the source of those obligations.

Peters argues that the Jurisdiction Statute does not apply to him "because he has no independent requirement to register under Florida law." Appellant's Br. at 9. In support of this proposition, Peters relies on the Court of Appeals' decision in *Marroquin*. *Id.* at 16–17. The defendant in that case had been convicted of Class D felony sexual misconduct with a minor, an offense that did not (and still does not) require him to register as a sex offender in Indiana. 228 N.E.3d at 1150 & n.1. After moving to Virginia, that state required him to register there for ten years—later amended to lifetime registration—based on the Indiana conviction. *Id.*

When the defendant moved back to Indiana, the sheriff informed him that the Jurisdiction Statute required him to register in Indiana for life, just as Virginia had required of him. *Id.* The defendant sued, arguing that the Jurisdiction Statute "doesn't apply when the requirement to register in another jurisdiction is based entirely on the existence of an Indiana conviction—that is, when there is no 'independent requirement' to register in another jurisdiction." *Id.* at 1151 (citation omitted). The Court of Appeals agreed, reasoning that the purpose of the Jurisdiction Statute "is to ensure that a person who is required to register in another jurisdiction *because of a sex offense in that jurisdiction* cannot avoid registration by moving to Indiana." *Id.* (emphasis added).

The Court of Appeals' majority here declined to follow *Marroquin*, explaining that "the plain language" of the Jurisdiction Statute "compels registration for individuals with out-of-state registration obligations regardless of the source of those obligations." *Peters*, 243 N.E.3d at 1151. We agree. And, though we deny transfer today in *Marroquin*, we expressly disavow the court's reasoning in that case. Indeed, the Jurisdiction Statute says nothing of the crime's location; rather, its plain text refers to "*any* jurisdiction," not "another jurisdiction," as the *Marroquin* court interpreted it. *See* I.C. § 11-8-8-19(f) (emphasis added). And as this Court stressed in *State v. Zerbe*, it's "not [the offender's] *crime* that triggers his obligation to register as a sex offender in Indiana; rather, it is [the other state's] *registry requirement* that does so." 50 N.E.3d 368, 370 (Ind. 2016).

Our conclusion here notwithstanding, we must still decide whether the State of Florida requires Peters to register there as a sex offender and, thus, whether the Jurisdiction Statute applies to him. For the reasons below, we conclude that it does not.

## II. Because Peters need not *currently* register in Florida, the Jurisdiction Statute does not apply to him.

To reiterate, when a person in Indiana "is required to register as a sex or violent offender in any jurisdiction," the Jurisdiction Statute requires that person to "register for the period required by the other jurisdiction or the period described in this section, whichever is longer." I.C. § 11-8-8-19(f). Peters argues that, because the Jurisdiction Statute is "written in the present tense," it "applies only to people who **presently** have a duty to register in any other jurisdiction." Appellant's Br. at 17. So, once he left Florida, he insists, he no longer had a duty to register there "because he no longer maintains a temporary residence there." Pet. to Trans. at 10. Peters admits that Florida maintains—and has no obligation to remove—his public profile from its online sex-offender registry. Appellant's Br. at 15. But he distinguishes a "state's obligation to notify the community of registrants in the state" from an offender's "duty to register" in that state. *Id.* at 13.

For its part, the State acknowledges that Peters "might not have to update his information personally in Florida while living and remaining in Indiana." Resp. to Pet. to Trans. at 16. But the duty to personally "update registration information," the State submits, is "the only obligation terminated" by leaving the State of Florida, "not the duty to register." *Id.* at 17. A "sex offender's registration requirement does not terminate when that offender moves to another jurisdiction," the State contends, so "Peters has a continuing obligation to register in Florida." *Id.* at 6, 11.

Based on our reading of the applicable statutes and pertinent case law, we agree with Peters.

## A. Under the applicable Florida statute, the registration obligations of a former Florida resident effectively lapse, with no requirement to "reregister."

Florida requires a sexual offender to report in person for "initial registration" at a local sheriff's office within forty-eight hours after establishing permanent or temporary residence in that state. Fla. Stat. Ann. § 943.0435(2)(a). At that "initial registration," the offender must report, among other things, his "address of permanent or legal residence or address of any current temporary residence, within this state or out of state." *Id.* § 943.0435(2)(b). Beyond this "initial registration" obligation, Florida requires a sexual offender to "report in person each year" at specified times "to the sheriff's office in the county in which he or she resides or is otherwise located to *reregister*." *Id.* § 943.0435(14)(a) (emphasis added). Whether this "reregistration" mandate applies to Peters is a decisive question. We conclude that it does not.

Florida defines a "sexual offender" (as relevant to the circumstances here) as a person who "establishes or maintains a residence" in that state, who has been designated as "any" type of sexual offender "in another state or jurisdiction," and who was or would be (if still living there) "subjected to" the registration and reporting requirements in that other state or jurisdiction.[6] *Id.* § 943.0435(1)(h)1.b. When he returned to his home in Illinois (and ultimately settled in Indiana), Peters no longer *established or maintained a residence* in the State of Florida. And because he was no longer a "sexual offender" in Florida, as that state defines the term, the reregistration requirement no longer applied to him.

---

[6] Florida also defines a "sexual offender" as a person who's been convicted of a criminal offense or adjudicated of a delinquent act "in another jurisdiction" that is "similar" to one of several specific offenses proscribed by Florida statute. Fla. Stat. Ann. § 943.0435(1)(h)1.a, c, d. The record here informs us that Peters was convicted in Illinois of "Criminal Sexual Abuse/Force," a misdemeanor offense. App. Vol. 2, p. 18. But the lack of further information (*e.g.*, a statutory citation) prevents us from determining whether the offense for which he was convicted in Illinois is "similar" to one of the listed Florida offenses.

Our reading of this definition harmonizes with Florida's statutory procedure for a "sexual offender who intends to establish a permanent . . . residence in another state or jurisdiction." *Id.* § 943.0435(7). In those circumstances, the soon-to-be-out-of-state offender must "report in person" to the local sheriff's office to provide an address of "intended residence" so that the sheriff can properly notify the other state of the "offender's intended residence." *Id.* There is no requirement that the soon-to-be-out-of-state offender "*re*register." Nor is there any requirement that the offender, once he's established an out-of-state permanent residence, update the local sheriff's department in Florida with any subsequent out-of-state address changes—or any life changes for that matter (*e.g.*, name, hair color, tattoos, or other identifying marks).

In short, while establishing an out-of-state permanent residence does not "de-register" the offender in Florida, as the State characterizes it, *see* Appellees' Br. at 26, the former Florida resident's registration obligations effectively lapse, with no requirement to "reregister." The offender need only "reregister" in Florida if he later returns there to take up residence— whether permanent or temporary—for three or more days. *See* Fla. Stat. Ann. § 943.0435(14); *id.* § 775.21(2)(k), (n).

Our reading of the Florida statute finds support in two cases cited by the State for the opposite conclusion: *Lindsey v. Swearingen*, 582 F. Supp. 3d 1127 (N.D. Fla. 2022), and *McGroarty v. Swearingen*, 977 F.3d 1302 (11th Cir. 2020). In *Lindsey*, the Federal District Court for the Northern District of Florida addressed "whether Florida may keep the individual's Florida registration publicly available after the individual moves out of Florida." 582 F. Supp. 3d at 1128. The court ultimately held "that the United States Constitution does not require Florida to purge its otherwise-public registration records just because an offender has left the state." *Id.* at 1131 (emphasis omitted). Critically, though, the court acknowledged that, while "the prior Florida registration, including information provided before his departure from Florida, remains publicly available," an offender "is *no longer required to update his Florida sex-offender registration*" upon moving from the state. *Id.* at 1128 (emphasis added). In *McGroarty*, the Eleventh Circuit Court of Appeals made a similar observation,

declaring that, while an out-of-state offender's information is subject to "continued display" on "Florida's sex offender registry website," the offender himself "has *no continuing registration requirements*" once he's moved from Florida. 977 F.3d at 1307 (emphasis added).

We find further support for our conclusion in *Nichols v. United States*, 578 U.S. 104 (2016). The defendant in that case, a convicted sex offender under federal law, moved to the Philippines without notifying Kansas authorities of his change in residence. *Id.* at 105. At the time, the federal Sex Offender Registration and Notification Act (SORNA) required an offender to "register, and keep the registration current, in each jurisdiction where the offender resides." *Id.* at 107. Any change in residence required the offender, within three days, to "appear in person in at least [one] jurisdiction involved" and to "inform that jurisdiction" of the change. *Id.* (emphasis omitted). The question before the United States Supreme Court was whether "the State a sex offender leaves—that is, the State where he formerly resided—qualifies as an 'involved' jurisdiction." *Id.* (citation omitted). The Supreme Court answered that question in the negative, holding that the former state of residence (Kansas) was *not* an "involved" jurisdiction. *Id.* at 109. In so holding, the Court stressed the SORNA's use of "the present tense" in requiring the offender to maintain his registration in the place he "resides." *Id.* "A person who moves from Leavenworth to Manila no longer 'resides' (present tense) in Kansas," the Court explained, adding that, "although he once *resided* in Kansas, after his move he 'resides' in the Philippines." *Id.* Notably, the Court rejected the government's argument that "once an offender registers in a jurisdiction, that jurisdiction necessarily *remains* involved" simply "because the offender continues to appear on its registry as a current resident." *Id.* at 110 (internal quotation marks omitted).

## B. Even if it could be interpreted as imposing an ongoing obligation, the Florida statute requires no in-person registration for permanent out-of-state offenders, rendering the Jurisdiction Statute inapplicable.

To reiterate once again, the Jurisdiction Statute requires a person to register as a sex offender in Indiana for a specified period when he or she "is required to register as a sex or violent offender in any jurisdiction." I.C. § 11-8-8-19(f). The SORA defines the term "register" as reporting certain information "in person" to a local law-enforcement authority. I.C. § 11-8-8-4. The concurrence would prefer to resolve this case based on this statutory definition alone—a purportedly "simpler, narrower approach" than the "needlessly circuitous" path of deciding a "thorny issue of Florida law." *Post*, at 1, 3. But to reach the conclusion that "Peters need not report 'in person' in Florida," *see id.* at 2, one can't simply rely on Indiana law alone, as the concurrence tacitly acknowledges, *see id.* (analyzing Florida statutes). To the contrary, we must first determine whether Florida imposes an in-person registration requirement on its permanent out-of-state offenders. It does not. In fact, an offender must report "in person" in Florida *only* in the following circumstances: (1) for the initial registration;[7] (2) when he or she intends to vacate a Florida residence;[8] (3) every thirty days while the offender maintains a transient residence;[9] (4) when the offender *intends to* establish a permanent, temporary, or transient residence in another state;[10] and (5) when the offender is required to "reregister."[11]

The concurrence further reasons that Indiana's definition of "register" suffices to resolve this case because Peters "need not provide Florida"

---

[7] Fla. Stat. Ann. § 943.0435(2)(a).

[8] *Id.* § 943.0435(4)(b)1.

[9] *Id.* § 943.0435(4)(b)2.

[10] *Id.* § 943.0435(7).

[11] *Id.* § 943.0435(14)(a).

with the "Indiana-specific information" required under the statute. *Post*, at 1, 2; *see* I.C. § 11-8-8-4 (citing I.C. § 11-8-8-8). But the information an offender must report under code section 11-8-8-8 is not necessarily "Indiana-specific." *Compare* I.C. § 11-8-8-8(a) (requiring offender to report, among other things, name, date of birth, sex, race, height, weight, hair color, eye color, a description of the offense for which they stand convicted, email addresses, and social-media profiles), *with* Fla. Stat. Ann. § 943.0435(2)(b), *and id.* § 943.0435(14)(c)(1) (requiring offender to report substantially similar information).

To the extent that code section 11-8-8-8 enumerates specific reporting requirements that Florida does not explicitly require of an offender, *see post*, at 2, the Florida statute contains a catch-all provision that could very well encompass that information, *see* Fla. Stat. Ann. § 943.0435(2)(c) (requiring the offender to report on "any other information determined necessary" by law enforcement). What's more, Indiana's SORA contains the means to facilitate the exchange of such information between jurisdictions. *See, e.g.*, I.C. § 11-8-8-20(a) (allowing law enforcement to "enter into a compact or agreement with one (1) or more jurisdictions outside Indiana to exchange notifications"); I.C. § 11-8-8-7(j) (requiring local law enforcement, upon an offender's registration, to update the national Sex Offender Registry database and to "notify every law enforcement agency having jurisdiction in the county where the sex or violent offender resides").[12]

---

[12] The concurring opinion also seems to overlook code subsection 11-8-8-8(a)(3), which requires an out-of-state offender who temporarily resides, works, or attends school in Indiana to report the name and address of his or her employer and school campus, along with the address where he or she "stays or intends to stay while in Indiana." I.C. § 11-8-8-8(a)(3). Florida residents (and presumably residents from most other jurisdictions) who fall into this category must still register in person in that state. *See* Fla. Stat. Ann. § 943.0435(14)(a). But the theory set forth by the concurring opinion would exempt these persons—at least those with a criminal history similar to Peters'—from registering here during their temporary stay because Indiana requires information that Florida expressly does not.

In short, even if it could be interpreted as imposing an ongoing obligation,[13] the Florida statute does not require *in-person* registration for permanent out-of-state offenders (like Peters), thus rendering the Jurisdiction Statute inapplicable.[14]

# Conclusion

For the reasons above, we hold that the Jurisdiction Statute applies to a person with out-of-state-registration obligations, regardless of the source of those obligations. But because Peters is not *currently* required to register in Florida, we hold that the Jurisdiction Statute does not apply to him. We thus reverse the trial court and remand for entry of summary judgment in Peters' favor.

Rush, C.J., and Massa, J., concur.
Molter, J., concurs in part and in the judgment with separate

---

[13] *See* Fla. Stat. Ann. § 943.0435(11) (stating that a "sexual offender shall maintain registration with the department for the duration of his or her life unless the sexual offender has received a full pardon or has had a conviction set aside in a postconviction proceeding"). The concurrence points to this provision to question our "conclusion that Peters is no longer a sexual offender under Florida law." *Post*, at 4. But even if Peters' "absence from Florida does not change his *status* as a 'sexual offender' there," *see id.* at 3 (emphasis added), nothing in the statute suggests that he has an "ongoing registration obligation there after leaving the state," *see id.* at 2. And even if there were such an obligation, the concurrence's extended analysis of this statute arguably follows the same "needlessly circuitous" path that we travelled. *See id.* at 3.

[14] Of course, this conclusion begs the question: what's the purpose of the Jurisdiction Statute if most states are like Florida in that they impose no "in person" registration requirement on offenders who no longer live in the state? It seems the Jurisdiction Statute would still apply to transient Indiana residents who have homes in this state and another state or who live in this state and work, go to school, or vacation in another state. Indeed, Indiana law expressly contemplates such scenarios. *See* I.C. § 11-8-8-7(a) (defining residency for sex offenders to include a person who spends at least seven days in the state, "owns real property in Indiana and returns to Indiana at any time," or who works in the state for a total period exceeding fourteen days).

opinion.

Slaughter, J., concurs in the judgment with separate opinion.

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke

Brooklyn, Indiana

ATTORNEYS FOR APPELLEES

Theodore E. Rokita

Attorney General of Indiana

James A. Barta

Solicitor General of Indiana

David A. Arthur

Deputy Attorney General

Indianapolis, Indiana

Adam S. Willfond

Assistant County Attorney

Noblesville, Indiana

**Molter, J., concurring in part and in the judgment.**

I concur in the judgment and join all but footnotes 12 and 14 of the Court's opinion. I write separately to note that recent cases involving what the Court refers to as the Jurisdiction Statute, Ind. Code § 11-8-8-19(f), reveal three areas where, without further legislative clarification, courts may continue to struggle interpreting the statute.

**Timing.** The Jurisdiction Statute says: "A person who **is** required to register as a sex or violent offender in any jurisdiction shall register for the period required by the other jurisdiction or the period described in this section, whichever is longer." *Id.* (emphasis added). Ambiguity emerges from the verb tense.

One interpretation is that the statute covers only those who must continue registering in another state even after they come to live, work, or study in Indiana. So if someone no longer has to register in another state because they have moved to Indiana, then they don't have to register in Indiana either. That is, they are not someone who **is**—present tense—required to register in another jurisdiction.

That is typically how we understand the legislature's use of the present tense verb "is." And that is how footnote 14 of the Court's opinion interprets the statute. But as the footnote discussion shows, that interpretation gives the statute short reach. The statute would cover only offenders with a dual presence in Indiana and another state, such as someone who lives, works, or studies in Indiana while working, studying, or maintaining a second home in another state.

Yet the legislature was aiming much further. As the Court's opinion explains, the statute's purpose is to keep Indiana from becoming a haven for sex offenders to escape other states' registration laws. *Ante*, at 6. So the General Assembly was even more concerned with an offender's registration requirements *before* they came to Indiana. After all, there are limits to another state's power to regulate people after they move here anyway. *See Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000) ("A state's legislative jurisdiction is circumscribed by the Due Process Clause: There must be at

least some minimal contact between a State and the regulated subject before it can, consistently with the requirements of due process, exercise legislative jurisdiction." (quotations omitted)).

That said, it still may be too imprecise to say the legislature was concerned with other states' registration requirements *any* time before an offender came to live, work, or study in Indiana. As this case illustrates, offenders may travel through multiple states over time, and the General Assembly may not wish to impose a registration requirement in Indiana that parallels the requirements of every state through which the offender has ever traveled since their conviction. The best understanding, then, may be that the General Assembly's concern was the offender's registration requirements in another state both after and *immediately before* coming to live, work, or study in Indiana. With that view, the Jurisdiction Statute seems to instruct that whatever an offender's registration requirements were immediately before coming to Indiana, those requirements effectively travel with the offender when they arrive here.

Fortunately for today, we don't have to choose between these (or other) competing interpretations because Peters prevails either way. As both the Court's and Justice Slaughter's opinions explain, Peters doesn't have a current obligation to register in Florida. He also didn't have a duty to register in Florida immediately before moving to Indiana because he moved here from Illinois, not Florida (and Illinois didn't impose any registration requirement immediately before Peters moved to Indiana either). But there are likely many cases where a registration obligation will turn on this question of statutory interpretation.

**Definition of "Register."** The General Assembly used a single definition for "register" throughout the Sex Offender Registration chapter, which is "to report in person to a local law enforcement authority and provide the information required under" Indiana Code section 11-8-8-8. I.C. § 11-8-8-4. It certainly makes sense to use the same definition for all references to Indiana's registry. But using that same definition for other states' registries poses at least three problems.

First, the definition refers only to registering "in person." Other states may not require in-person registration.

Second, the definition says that "register" means reporting in person "to a local law enforcement authority," I.C. § 11-8-8-4, which is defined as "the: (1) chief of police of a consolidated city; or (2) sheriff of a county that does not contain a consolidated city," I.C. § 11-8-8-2. Other states may require offenders to report to someone other than the county sheriff or the police chief in a consolidated city.

Third, the General Assembly defined "register" to mean providing "the information required under" Indiana Code section 11-8-8-8, and that section identifies dozens of specific data points. No doubt, every state's registry includes some of section 8's data points, like name and address. But other states may not require some other data points, like the vehicle information Justice Slaughter discusses in his opinion. *Post*, at 2.

The State argues this ambiguity should be resolved by giving "register" its colloquial meaning rather than its statutory definition. But while the State's proposed interpretation is sensible, it contradicts the General Assembly's direction that the statutory definition of "register" applies to every reference in the sex offender registration chapter, including the Jurisdiction Statute. I.C. § 11-8-8-4 (defining "register" "[a]s used in this chapter"). And we typically don't ignore the General Assembly's statutory definitions, especially when that would require us to define the same term differently in the same part of the Indiana Code. *See Allen v. Allen*, 54 N.E.3d 344, 347 (Ind. 2016) ("The legislative definition of certain words in one statute, while not conclusive, is entitled to consideration in construing those same words in another statute.").

**Indiana Offenses.** The Court's opinion notes that we have denied transfer but still disavow the reasoning in *Marroquin v. Reagle*, 228 N.E.3d 1149, 1151 (Ind. Ct. App. 2024). *Ante*, at 7. "Marroquin was convicted of Class D felony sexual misconduct with a minor, which is not (and has never been) a crime that requires sex-offender registration in Indiana." *Marroquin*, 228 N.E.3d at 1149. But then he moved to Virginia, which imposed a lifetime registration requirement based solely on the Indiana conviction. *Id.* at 1150. And when Marroquin moved back to Indiana, the State claimed that the Jurisdiction Statute required him to register for life here too. *Id.* Even though Indiana did not originally require registration,

the State argued, Marroquin's travel through Virginia meant that when he returned to Indiana, Virginia's lifetime registration obligation based on the Indiana conviction effectively came back with him.

The Court of Appeals disagreed, holding that the Jurisdiction Statute doesn't apply "when the requirement to register in another jurisdiction is based entirely on the existence of an Indiana conviction." *Id.* at 1151. But our Court agrees with the State that the *Marroquin* panel mistakenly read those words into the statute. *Ante*, at 7. The Court of Appeals panel in this case reached the same conclusion we do, but it acknowledged this issue "might be worthy of the legislature's consideration." *Peters v. Quakenbush*, 243 N.E.3d 1145, 1151 n.3 (Ind. Ct. App. 2024).

The *Marroquin* oral argument in our Court revealed that by disavowing the Court of Appeals' panel reasoning here, we might be swapping a statutory interpretation question for a constitutional interpretation question. Under the State's view, two Hoosiers could be convicted of the same Indiana crime—the offense Marroquin committed—with only one required to register: the one who moved to a state with more rigorous registration requirements (like Virginia) before moving back to Indiana.

The Indiana Constitution's Privileges and Immunities Clause provides that the "General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Ind. Const. art. 1, § 23. We have understood the prohibition on unequal privileges to encompass unequal burdens, and we have understood this to mean that when the legislature treats groups differently, the distinction it makes between the groups must be related to the subject matter of the legislation. *Collins v. Day*, 644 N.E.2d 72, 77–78, 80 (Ind. 1994).

So, for example, Evansville's smoking ban was unconstitutional because it applied to bars and restaurants but not riverboat casinos, and nothing distinguishing riverboat casinos from bars and restaurants relates to protecting against health risks like lung disease, which is the point of a smoking ban. *Paul Stieler Enters., Inc. v. City of Evansville*, 2 N.E.3d 1269, 1275 (Ind. 2014) ("In comparing the disparate treatment (prohibiting and permitting smoking) to the inherent differences of the two classes

(whether floating and whether gambling is conducted under the Riverboat Gambling statutes), the legislative purpose for consideration is public health, not economic advantage to the City."). Here, there may be a question about how the distinction between (a) Hoosiers who relocated to a state like Virginia (with greater registration requirements for Indiana convictions) before returning, and (b) Hoosiers who have not left the state, relates to the subject matter of our sex offender registration laws, which "protect the public from the danger and propensity for recidivism of convicted sex offenders." *Ante*, at 5. Of course, in a case where the issue is properly preserved and presented (unlike in *Marroquin*), the State may very well be able to demonstrate the propriety of applying the statute to circumstances like those in *Marroquin*. But this concern may further explain why courts are struggling to implement the statute in contexts the General Assembly likely did not envision when enacting the Jurisdiction Statute. *Cf. Peters*, 243 N.E.3d at 1152 (Bailey, J., concurring in result) ("But I am troubled by the lack of any constraint upon blanket enforcement in this State regardless of where the crime originated and how onerous the subsequent reporting requirements are.").

\* \* \*

Our courts have been grappling with these and adjacent questions, and reasonable minds have differed. At the end of the day, though, these are primarily statutory interpretation questions, and the General Assembly remains free to revise its statutes to provide more clarity.

**Slaughter, J., concurring in the judgment.**

I concur with the Court's judgment that Peters need not register for life in Indiana. I write separately to note that I am unable to join the Court's opinion, which concludes that Peters is no longer a "sexual offender" under Florida law. The Court decides a question of Florida law I believe to be unnecessary to resolve this case. I prefer the simpler, narrower approach of basing our decision on the meaning of "register", as Indiana's statute defines it.

A

Among those who must register as a sex offender in Indiana is any "sex or violent offender who resides in Indiana". Ind. Code § 11-8-8-7(a)(1). A "sex or violent offender" includes "a person who is required to register as a sex or violent offender in any jurisdiction". *Id.* § 11-8-8-5(b)(1). A person required to register elsewhere under the "any jurisdiction" provision "shall register for the period required by the other jurisdiction or the period described" by Indiana law, "whichever is longer." *Id.* § 11-8-8-19(f). This case turns on whether (and, if so, for how long) Peters "is required to register" in Florida as Indiana defines "register". *Ibid.*

Our legislature has defined what it means to "register" under Indiana's statute. "When the General Assembly has defined a statutory term, we are bound by its definition." *WTHR-TV v. Hamilton Se. Schs.*, 178 N.E.3d 1187, 1191 (Ind. 2022). Indiana defines "register" thus: "As used in this chapter, 'register' means to report **in person** to a local law enforcement authority and provide the information **required under section 8** of this chapter." I.C. § 11-8-8-4 (emphasis added). This definition of "register" has two key aspects: (1) the offender must report "in person", and (2) he must provide all the Indiana-specific information "required under section 8" of Indiana Code chapter 11-8-8. In other words, "register" requires reporting in person to local law enforcement and providing Indiana-specific information.

The definition's introductory clause—"As used in this chapter"—means that "register" has this same meaning throughout the entire sex-offender-registration statute, including the "any jurisdiction" provision of section 5(b)(1). *Ibid.* "The legislature knows how to apply a statutory definition broadly." *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019). Indeed, "[e]xamples abound of the legislature's applying a

definition throughout the entire code, as well as throughout a title, article, or chapter." *Ibid.* (cleaned up). When the legislature "takes the trouble to define the terms it uses, a court must respect its definitions as 'virtually conclusive.'" *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 59 (2024) (quoting *Sturgeon v. Frost*, 587 U.S. 28, 56 (2019)). Thus, when our sex-offender registration statute requires a person to "register" in Indiana if he must "register as a sex or violent offender in any jurisdiction", I.C. § 11-8-8-5(b)(1), we must apply our legislature's definition of what it means to "register".

I agree with the Court that Peters does not have to "register" in Florida under Indiana's definition. *Ante*, at 12–14 (Part II.B). First, Peters need not report "in person" in Florida, even assuming he has an ongoing registration obligation there after leaving the state. As the Court notes, the only source for an ongoing, in-person registration requirement is Florida's "reregistration" provision. *Id*. at 12 n.11 (citing Fla. Stat. § 943.0435(14)(a)). This provision requires a registrant to "report in person" several times a year "in the county in which he or she **resides or is otherwise located** to reregister." Fla. Stat. § 943.0435(14)(a) (emphasis added). This provision presumes the registrant resides in Florida and directs him to reregister with the sheriff in his county of residence or location. *Ibid.* Of course, Peters does not currently reside in Florida, and he is not currently located there. Thus, Florida's reregistration provision does not apply to Peters. This approach alone resolves the case for Peters. He does not satisfy Indiana's first element of "register" because he need not report in person in Florida.

What is more, Peters does not satisfy Indiana's second element of "register" because he need not provide Florida with "the information required under section 8" of our registration statute. As just one example, Indiana requires registrants to submit information for "any vehicle the sex or violent offender **owns or operates on a regular basis**". I.C. § 11-8-8-8(a)(1) (emphasis added). Florida, in contrast, requires registrants to submit information only for "all vehicles **owned**". Fla. Stat. § 943.0435(2)(b) (emphasis added); see *id*. § 775.21(2)(p) (defining "Vehicles owned"). This required-information mismatch means registrants like Peters would never have to provide Florida with all the information "required under section 8" of the Indiana statute.

This result highlights the problem with the State's argument against Peters. Our legislature applies the same, two-prong meaning of "register" throughout the entire chapter, including the "any jurisdiction" provision of section 5(b)(1). What follows is the counterintuitive result that Indiana's "any jurisdiction" provision does not turn on whether the offender must register elsewhere under the law of the other jurisdiction. It turns, instead, on whether the offender must register elsewhere under **Indiana's** definition of register, which does not ask whether the offender is registered or must register elsewhere under the law of the other jurisdiction. Though this outcome may not be what our legislature had in mind, the wisdom of the legislature's broad definition of "register" is not before us. "If a statute's text compels a particular result, judges must not second-guess the outcome". *State v. Neukam*, 189 N.E.3d 152, 155 (Ind. 2022).

Because Peters has no duty to "register" in Florida, as Indiana defines the term, he has no present duty under section 5(b)(1) to register here at all, much less a duty to register here for life.

B

The above analysis illustrates how my view of resolving this case differs from the Court's. Respectfully, the Court's approach gives short shrift to Indiana's definition of register. And in doing so, the Court decides a thorny issue of Florida law it need not. Though the Court ultimately reaches the right destination, its path is needlessly circuitous. I prefer a shorter and straighter route—one that avoids having to decide Peters's "sexual offender" status under Florida law.

It is far from clear, in any event, that the Court's analysis of Peters's status in Florida is correct. The Court notes Peters's "sexual offender" status in Florida is premised on a prior Illinois conviction. *Ante*, at 9 (citing Fla. Stat. § 943.0435(1)(h)1.b.). The Court then holds that Peters is no longer a "sexual offender" because he does not currently live in Florida. *Ibid*. But Peters's absence from Florida does not change his status as a "sexual offender" there. Florida presumes that "a sexual offender shall maintain registration with the [Florida Department of Law Enforcement, Fla. Stat. § 943.02(1)] for the duration of his or her life", *id.* § 943.0435(11), regardless of his residence. Despite this lifetime presumption, the Florida legislature established one avenue for Peters to remove his designation as a "sexual offender" in Florida. To remove his Florida status, Peters must

provide Florida's law-enforcement department with an order from the Illinois court that "designated" him as a sexual offender in Illinois. *Id.* § 943.0435(11)(b). And the Illinois order must state that "such designation has been removed" there. *Ibid.* Here, the record contains no evidence that the Florida department received or acted on such an order from Illinois. Thus, I see no basis for our Court's conclusion that Peters is no longer a sexual offender under Florida law. *Ante*, at 9.

My point is not that the Court may be misreading or misapplying Florida law, though I think it is. My point, rather, is that my alternative path of rooting our analysis in Indiana's definition of "register" avoids a messy Florida-law question the parties neither briefed nor argued.

*    *    *

For these reasons, I concur only in the Court's judgment.